**United States District Court**
For the Northern District of California

1
2
3
4
5                              UNITED STATES DISTRICT COURT
6                             NORTHERN DISTRICT OF CALIFORNIA
7
8    SANRIO COMPANY, LTD.,                          No. C-09-0440 EMC
9                    Plaintiff,
                                                    **ORDER GRANTING PLAINTIFF'S**
10         v.                                       **MOTION FOR DEFAULT JUDGMENT**
                                                    **AGAINST DEFENDANT LEE**
11   J.I.K. ACCESSORIES, *et al.*,
                                                    **(Docket No. 103)**
12                   Defendants.
13   _____/
14
15
16          Plaintiff's motion for default judgment came on for hearing before the Court on April 13,
17   2012.  Docket No. 103.  For the reasons set forth below, the Court **GRANTS** Plaintiff's motion for
18   default judgment.
19                        **I.    FACTUAL & PROCEDURAL HISTORY**
20          Plaintiff Sanrio Company, Ltd. is the creator and owner of the children's character Hello
21   Kitty, as well as other children's characters such as Kerokerokeroppi, Charmmy Kitty, and Hana-
22   Maru.  Compl. ¶ 38.  Plaintiff has sold merchandise featuring its characters since 1976.  Compl.
23   ¶ 39.  Plaintiff owns numerous copyright registrations depicting Hello Kitty and other characters,
24   including Registration Nos. VA 130-420, VA 1-303-874, VA 1-342-775, VA 707-212, VA 636-579,
25   and VA 1-296-111.  Compl. ¶¶ 42-44; *see also* Compl. Exhs. 6-8.  Plaintiff also owns U.S.
26   Trademark registrations for the Hello Kitty design and name for use in jewelry, hair accessories, and
27   bags.  Compl. ¶¶ 45, 46; *see also* Compl. Exhs. 9.  Plaintiff also alleges that it has common law
28   trademarks in its characters, as Plaintiffs have used the Hello Kitty design and characters since

1   January 1976.  Compl. ¶ 48.  In total, Plaintiff spends close to $2 million annually in the United

2   States to promote its character products, and retail sales of its Hello Kitty products approximate

3   $500 million.  Compl. ¶¶ 54, 55.

4          In August 2007, Plaintiff became aware of Defendants displaying and selling unauthorized

5   and/or counterfeit Hello Kitty and Keroppi items through various Amuse, Bliss, and Final Choice

6   retail stores throughout California.  Compl. ¶ 57.  Such items included cell phone accessories,

7   jewelry, and handbags.  Compl. ¶ 57.  Further, many of the counterfeit items were found to have

8   dangerous levels of lead.  Docket No. 103-12 ¶ 5 ("Kattwinkel Decl.").  The companies appeared to

9   be related, and several used the identical Amuse name and logo for their store signage and

10  merchandise packaging.  Compl. ¶ 15.

11         Defendant Lee, as the owner and President of Heiress Enterprises, Inc.,[1] operated a Bliss

12  retail store in Santa Ana, California.  Compl. ¶¶ 10, 24.  Plaintiff never assigned or licensed any

13  rights in the Hello Kitty marks or copyrights to Lee or Heiress Enterprises.  Compl. ¶ 57.  On

14  September 25, 2007, Plaintiff's investigator observed for sale Hello Kitty jewelry and cell phone

15  charms at the Santa Ana store.  Docket No. 103-10 ¶¶ 9, 10 ("Fernandez Decl.").  Plaintiff's

16  investigator purchased one Hello Kitty cell phone charm, which Plaintiff confirmed was a

17  counterfeit.  Fernandez Decl. ¶ 11; Docket No. 103, Exh. E; Kattwinkel Decl. ¶ 4.

18         Plaintiff's investigators sent cease and desist letters to many of the retailers.  When

19  infringement continued, Plaintiff brought this suit in January 2009, alleging claims for: (1) federal

20  copyright infringement under 17 U.S.C. § 101 *et seq.*, (2) trademark infringement under 15 U.S.C. §

21  1114 *et seq.*, (3) federal unfair competition and common law trademark infringement under 15

22  U.S.C. § 1125(a), and (4) unfair competition under California Business & Professions Code §

23  17200.

24         Defendant Lee and Heiress Enterprises were served on February 23, 2009, with the process

25  server personally delivering copies to Defendant Lee.  Docket No. 13 at 7, 13.  On May 14, 2009,

26  Plaintiff submitted proofs of service as to Defendant Lee and Heiress Enterprises.  Docket No. 13.

27

28         [1]  Heiress Enterprises has since been dissolved.  *See* Docket No. 103, Exh. C.

On May 28, 2009, Plaintiff sought entry of default as to certain Defendants, including Defendant Lee.  Docket No. 14.  Default was entered as to Defendant Lee.  Docket No. 16.

Plaintiff now seeks default judgment as to Defendant Lee.  Motion at 1.  Plaintiff seeks broad injunctive relief to prevent or restrain further infringement, as well as statutory damages of $40,000 against Defendant Lee.  Motion at 11, 14.  Plaintiff does not seek attorneys' fees or costs.  Motion at 10.  Defendant Lee has not opposed this motion.

## II.   DISCUSSION

A.    Standard of Review

As a preliminary matter, the Court must first "assess the adequacy of the service of process on the party against whom default is requested."  *Bd. of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Dec. 29, 2000). Service may be effected upon a corporation in the United States "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(h)(1)(B).  On February 23, 2009, Plaintiff personally served on Defendant Lee the summons and complaint. Docket No. 13 at 7, 13.  The Court finds that service was proper in this case.

B.    *Eitel* Analysis

If the Court determines that service was sufficient, the Court should consider the following factors in determining if entry of default judgment is warranted:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Upon entry of default, a court must take as true all factual allegations in the complaint except those related to the amount of damages.  *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

///

///

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1   1.   Prejudice to Plaintiff

2   The Court finds that Plaintiff will be prejudiced absent a default judgment, as they will likely

3   be left without a remedy. *See Walters v. Shaw/Guehnemann Corp.*, No. C 03-04058 WHA, 2004

4   U.S. Dist. LEXIS 11992, at *7 (N.D. Cal. Apr. 15, 2004) ("To deny plaintiffs' motion [for default

5   judgment] would leave them without a remedy."). Plaintiff argues that if Defendant Lee is permitted

6   to continue selling counterfeit goods that infringe on Plaintiff's trademarks and copyrights, and

7   which may contain potentially dangerous amounts of lead, Plaintiff will suffer irreparable harm to its

8   goodwill and reputation for producing high-quality goods. Motion at 5; Compl. ¶¶ 63, 80, 91;

9   Kattwinkel Decl. ¶ 5. Without entry of default judgment, Plaintiff contends that it will have no other

10  remedy for this harm, and will therefore be prejudiced. Motion at 5 (citing *PepsiCo, Inc. v. Cal. Sec.*

11  *Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is

12  not granted, Plaintiffs will likely be without other recourse for recovery.")). Thus, this factor weighs

13  in favor of default judgment.

14   2.   Substantive Infringement Claims

15       a.   Copyright Infringement

16  Plaintiff has established a copyright infringement claim. To establish copyright

17  infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of

18  constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499

19  U.S. 340, 361 (1991). Here, Plaintiff has produced its copyrights in artwork depicting the Hello

20  Kitty character artwork and the counterfeits that are being sold by Defendant Lee. *See* Compl. Exhs.

21  6-8; Docket No. 103, Exhs. A, E, H. The products sold by Defendant Lee are substantially similar

22  or identical to Plaintiff's Hello Kitty copyrights, establishing copyright infringement.

23       b.   Trademark Infringement

24  Plaintiff has also established a trademark infringement claim. To establish trademark

25  infringement and unfair competition claims, Plaintiff must show that: "(1) it has a valid, protectable

26  trademark, and (2) that [the defendant]'s use of the mark is likely to cause confusion." *Applied Info.*

27  *Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007). A mark registered on the principal

28  register is prima facie evidence of the validity of the registered mark and the registrant's ownership

**United States District Court**
For the Northern District of California

1  of the mark.  15 U.S.C. § 1125(a) (2006).  Here, Plaintiff has produced its trademark on the principal

2  register for the Hello Kitty character design and artwork.  Compl., Exh. 9.  This trademark confers a

3  conclusive presumption of distinctiveness and validity.  *See Applied Info. Scis. Corp.*, 511 F.3d at

4  970.

5        Plaintiff also demonstrates that there is a likelihood of confusion.  Likelihood of confusion is

6  determined by the eight *Sleekcraft* factors:

> (1) the strength of the mark; (2) proximity or relatedness of the goods;
> (3) the similarity of the marks; (4) evidence of actual confusion; (5)
> the marketing channels used; (6) the degree of care customers are
> likely to exercise in purchasing the goods; (7) the defendant's intent in
> selecting the mark; and (8) the likelihood of expansion into other
> markets.

11  *Perfumebay.com Inc. v. eBay, Inc.*, 506 F.3d 1165, 1173 (9th Cir. 2007).  "The test is a fluid one and

12  the plaintiff need not satisfy every factor, provided that strong showings are made with respect to

13  some of them."  *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631 (9th Cir. 2005).

14        Plaintiff has demonstrated confusion under the *Sleekcraft* factors.  First, the Hello Kitty mark

15  is protected on the principal register, creating a presumption that the mark is strong.  Further, the

16  Hello Kitty mark is particularly famous and recognizable, and Plaintiff has expended substantial

17  time and money since 1976 to develop and promote the Hello Kitty marks.  Compl. ¶¶ 39, 54, 55,

18  77, 78; *see also* Compl. Exh. 10 (news articles describing the popularity of Hello Kitty).  Second,

19  the counterfeit items are very similar or identical to genuine Hello Kitty products.  *See* Docket No.

20  103, Exh. A (examples of the counterfeit items).  Third, marks on the counterfeit items are identical

21  or substantially indistinguishable from Plaintiff's marks.  Fourth, the counterfeit items are being sold

22  through retail stores, which is the same marketing channel as those used by Plaintiff's genuine Hello

23  Kitty products.  Compl. ¶¶ 56, 57.  Fifth, the products are relatively inexpensive, and thus consumers

24  will likely not use particular care in distinguishing between them, especially when they look

25  virtually identical to the genuine products.  Sixth, it can be inferred from the character's popularity

26  that Defendant Lee was aware of the Hello Kitty mark and chose to infringe on the mark in order to

27  take advantage of its high visibility.  As Plaintiff has made strong showings in the majority of

28  *Sleekwood* factors, Plaintiff's failure to produce evidence of actual consumer confusion is not fatal.

5

1    The counterfeits are extremely similar to Plaintiff's products and would easily be mistaken as

2    genuine items; thus, Plaintiff has established a trademark infringement claim.

3         3.    Sufficiency of the Complaint

4         The Court finds that Plaintiff's complaint is sufficient and supports default judgment.

5    Plaintiff's complaint identifies the Hello Kitty copyrights and trademarks at issue, and provides

6    visual exhibits of Plaintiff's products with the counterfeit items to demonstrate confusion and

7    violation of Plaintiff's copyrights and trademarks.

8         4.    Amount of Money

9         Plaintiff seeks $40,000 from Defendant Lee.  Motion at 9.  As discussed below, this amount

10   is relatively low compared to the amount of statutory damages authorized under the relevant statutes.

11   The amount is also comparable with other consent judgments entered into by Plaintiff in this action,

12   who have settled between $10,000 and $250,000, with the amount varying by the level of

13   cooperation by the Defendant and the timeliness of the settlement.  Kattwinkel Decl. ¶ 7.  Plaintiff

14   limits its claim to statutory damages, and does not seek attorney's fees or costs against Defendant

15   Lee.  Opp. at 10.  The Court finds that this factor is likely neutral or weighs in favor of default

16   judgment.

17        5.    Possibility of a Dispute

18        The Court finds that there is little possibility of a dispute, which supports default judgment.

19   Plaintiff has produced the relevant copyrights and trademarks, and the counterfeit items clearly

20   infringe upon the marks.  Plaintiff has also produced evidence that Defendant Lee distributed the

21   counterfeit goods at issue.  *See* Docket No. 103, Exhs. E, H.  Finally, Plaintiff has entered into

22   consent judgments and settlements with the other Defendants in this case, which may also suggest

23   that there is no dispute of the facts.  *See* Docket Nos. 39, 41, 46, 54, 77, 90.  Thus, this factor weighs

24   in favor of default judgment.

25        6.    Excusable Neglect

26        There is no indication that Defendant Lee had a valid reason not to respond to the complaint.

27   Defendant Lee was personally served with the summons and complaint as well as this motion for

28

1    default judgment, and there is no reason to believe Defendant Lee is unaware of the action. Thus,

2    this factor weighs in favor of default judgment.

3           7.     Policy Favoring Decisions on the Merits

4           Although there is a policy favoring a decision on the merits of the case, it is likely that there

5    will be no opportunity for a decision on the merits in the instant case. Defendant Lee has failed to

6    appear in this case, and without her presence it is impossible to have a trial on the merits. As there

7    is likely little opportunity for a decision on the merits, this factor weighs in favor of default

8    judgment.

9    C.     Relief Sought

10          1.     Permanent Injunction

11          Plaintiff seeks a broad injunction preventing Defendant Lee from further infringing upon

12   Plaintiff's copyrights and trademarks. Under 17 U.S.C. § 502(a), the Court has the authority to grant

13   temporary and final injunctions to prevent or restrain infringement of a copyright. Likewise, under

14   15 U.S.C. § 1116(a), the Court has the authority to grant injunctions to prevent trademark

15   infringement.

16          In determining whether permanent injunctive relief is appropriate, the Court must look to

17   "well-established principles of equity." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391

18   (2006). Thus, Plaintiff must demonstrate:

19               (1) that it has suffered an irreparable injury; (2) that remedies available
                 at law, such as monetary damages, are inadequate to compensate for
20               that injury; (3) that, considering the balance of hardships between the
                 plaintiff and defendant, a remedy in equity is warranted; and (4) that
21               the public interest would not be disserved by a permanent injunction.

22   *Id.*

23          Here, Plaintiff has satisfied the four-factor test. First, the continued sale of counterfeits will

24   likely result not only in monetary harm from reduced sales, but harm to Plaintiff's goodwill and

25   reputation. This is especially true given that many of the counterfeit items have high levels of lead,

26   which could result in consumers who believed they purchased genuine products having a poorer

27   opinion of Plaintiff's products. *See* Kattwinkel Decl. ¶ 5; Docket No. 103, Exh. B.

28

United States District Court

For the Northern District of California

7

United States District Court

For the Northern District of California

1    Second, monetary damages are inadequate to compensate for the injury because Defendant

2 Lee could then continue to infringe upon Plaintiff's copyrights and trademarks.  Defendant Lee

3 could also continue to sell the inferior products, resulting in further reduction of Plaintiff's goodwill

4 and reputation which cannot be easily compensated with monetary damages.

5    Third, the balance of hardships weighs in favor of Plaintiff.  Without an injunction, Plaintiff

6 will suffer because Defendant Lee could continue to sell the Hello Kitty counterfeit items, which

7 could result in both reduced sales and harm to goodwill and reputation.  Defendant Lee would not be

8 burdened by the injunction, as she does not have the right to infringe upon Plaintiff's marks and is

9 not licensed to sell Hello Kitty products.

10    Fourth, the public interest will be served by supporting copyright and trademark rights.

11 Plaintiff also argues that this will reduce consumer confusion and prevent consumers from

12 purchasing items that have high levels of lead under the mistaken belief that they are purchasing

13 Plaintiff's genuine Hello Kitty products.

14    Based on the above factors, Plaintiff is entitled to an injunction in this case.  Plaintiff

15 requests that the injunction extend not only to Hello Kitty copyrights and marks, but to all marks and

16 copyrights presently owned by Plaintiff as well as copyrights or marks that Plaintiff may hold in the

17 future.  The Ninth Circuit has found that broad injunctions are appropriate where the goods at issue

18 are similar, and the injunction addresses such similarities.  *Perfumebay.com Inc.*, 506 F.3d at 1177.

19 Other courts have found that broad injunctions extending to all marks and copyrights owned by a

20 plaintiff are appropriate.  *E.g.*, *Lifted Research Grp., Inc. v. Salem*, No. C-08-4497 SC, 2009 U.S.

21 Dist. LEXIS 44850, at *2, 20 (N.D. Cal. May 15, 2009) (finding that broad injunction extending to

22 all marks and copyrights was appropriate, even though the defendant had only sold clothing

23 infringing upon a limited number of marks).  Courts have also issued injunctions extending not only

24 to all marks and copyrights owed by the plaintiff, but marks that the plaintiff might acquire in the

25 future in order to prevent future litigation.  *Id.*; *see also Sony Music Entm't Inc. v. Elias*, Case No.

26 CV 03-6387DT (RCx), 2004 U.S. Dist. LEXIS 30385, at *13-14 (C.D. Cal. Jan. 20, 2004) (finding

27 that injunction extending to new copyrighted works which are vulnerable to infringement was

28

United States District Court

For the Northern District of California

1   appropriate, as an injunction limited to existing works would require repetitive litigation to redress

2   future infringements).

3        The Court finds that a broad injunction is warranted in this case. Plaintiff has many

4   characters that are very recognizable and could easily be counterfeited, and Plaintiff is likely to

5   continue developing new marks and copyrights. To avoid future litigation for infringement of these

6   marks, the Court will issue a broad injunction that extends to all marks and copyrights owned by

7   Plaintiff, as well as marks that Plaintiff might acquire in the future.

8        2.   Statutory Damages

9        Finally, Plaintiff seeks damages for violations of the Copyright Act and the Lanham Act.

10  Under both statutes, an infringer is liable either for the plaintiff's actual damages or statutory

11  damages. 17 U.S.C. § 504(a) (2006); 15 U.S.C. § 1117(c) (2006). The Copyright Act and the

12  Lanham Act are considered "two separate statutory schemes to govern copyright and trademarks; in

13  order to effectuate the purposes of both statutes, damages may be awarded under both." *Nintendo of*

14  *Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1011 (9th Cir. 1994).

15       Plaintiff seeks statutory damages because of the difficulty in determining actual damages

16  without Defendant's participation in the suit. Motion at 12. Under the Copyright Act, the Court

17  may award statutory damages of not less than $750 or not more than $30,000 for all infringements of

18  a copyrighted work. 17 U.S.C. § 504(c)(1). However, where the infringement was committed

19  willfully, the Court may increase the award of statutory damages to not more than $150,000. *Id.* §

20  504(c)(2). Under the Lanham Act, the Court may award statutory damages of not less than $1,000

21  or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or

22  distributed. 15 U.S.C. § 1117(c)(1). However, if the Court finds that the use of the counterfeit mark

23  was willful, the Court may award not more than $2 million per counterfeit mark per type of goods or

24  services sold. *Id.* § 1117(c)(2).

25       In determining the amount of statutory damages, "the court has wide discretion in

26  determining the amount of statutory damages to be awarded, constrained only by the specified

27  maxima and minima." *Columbia Pictures Indus. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d

28

United States District Court
For the Northern District of California

1186, 1194 (9th Cir. 2001).  Many courts have considered the following factors in determining the

appropriate statutory damages award:

> (1) the expenses saved and the profits reaped; (2) the revenues lost by
> the plaintiffs; (3) the value of the copyright; (4) the deterrent effect on
> others besides the defendant; (5) whether the defendant's conduct was
> innocent or willful; (6) whether a defendant has cooperated in
> providing particular records from which to assess the value of the
> infringing material produced; and (7) the potential for discouraging the
> defendant.

*Feiya Cosmetics, LLC v. Beyond Beauty Int'l, LLC*, Case No. C-10-00967 JCS, 2011 U.S. Dist.

LEXIS 111769, at *37 (N.D. Cal. Aug. 29, 2011); *IO Grp. Inc. v. GLBT Ltd.*, No. C-10-01282 MMC

(DMR), 2011 U.S. Dist. LEXIS 87250, at *8 (N.D. Cal. Aug. 8, 2011).

  Here, Plaintiff does not have information as to expenses saved and profits reaped by

Defendant Lee or revenues lost by Plaintiff.  However, the other factors support higher statutory

damages.  The mark at issue is very valuable, as Hello Kitty is Plaintiff's most valuable asset.

Compl. ¶ 54.  A larger award would likely deter Defendant Lee and other infringers from selling

similarly infringing products, which is especially relevant given that there were numerous

Defendants involved in this case and the potential for infringement of Plaintiff's marks is high.  It is

also likely that the infringement was willful, as Plaintiff's marks are highly recognizable and

Defendant Lee likely attempted to exploit the popularity of the mark.  Finally, Defendant Lee has

not cooperated in this action, and may be better discouraged by larger damages.

  In the instant case, Plaintiff seeks $40,000.  While this amount sought is substantially higher

than the statutory minimums, the amount is appropriate given the above factors.  The amount sought

is also in line with the damages awarded as to other Defendants in this case, with whom Plaintiff

settled.[2]  Plaintiff also contends that the damages are in line with damages awarded on default

---

[2]  Other judgments in this case include: (1) $10,000 against Defendant Debbie Kim and Pinkland Corporation, successive owners of a single retail location; (2) $20,000 against Defendant Nana Accessory and Ho Yong Na, owners of two retail store locations who cooperated early in the suit; (3) $80,000 against Defendant Sukmin Bae and Lisa Bae, owners of two retail locations who refused to cooperate or settle but ultimately entered into mediation; (4) $250,000 against Defendant Accessitive Accessories Inc., Amuseco Accessories, B.B. Apparels, J.I.K. Accessories, Brian Bae, and Andy Bae, owners of one wholesale business and several retail stores who refused to cooperate or settle but ultimately entered into mediation; (5) $60,000 against John Bae and Aeron Bae, owners of four retail stores who stopped selling the counterfeits but refused to cooperate or settle until later in the suit; and (6) $32,500 against Defendants Seanna Corporation and Sang Wha Kim, owners of

United States District Court

For the Northern District of California

1   judgments in similar suits.  *See* Motion at 14-15 (describing other cases and statutory awards).  The

2   Court finds that Plaintiff's request is in line with other settlements in this case and other cases, and

3   reflects the high visibility of the mark and the likelihood that infringement was willful in this case.

4   In addition, Plaintiff is not seeking attorney's fees or costs, which it could otherwise seek as the

5   prevailing party in a copyright case.  17 U.S.C. § 505 (2006); *see also* 15 U.S.C. § 1117(a)

6   (permitting the award of reasonable attorney's fees under the Lanham Act in exceptional cases

7   only).

8          Accordingly, the Court will award $40,000 to Plaintiff.  The Court will also grant Plaintiff's

9   request for post-judgment interest on the damages awarded.  28 U.S.C. § 1961 permits interest to be

10  granted on any money judgment in a civil case recovered in district court.  *E.g.*, *Autodesk, Inc. v.*

11  *Flores*, No. 10-CV-01917-LHK, 2011 U.S. Dist. LEXIS 11687, at *29-30 (N.D. Cal. Jan. 31, 2011)

12  (awarding post-judgment interest on statutory damages, attorney's fees, and costs awarded).  Interest

13  is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year

14  constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve

15  System, for the calendar week preceding the date of the judgment."  28 U.S.C. § 1961.

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  _____

28  one retail store who settled after this motion for default judgment was filed. Kattwinkel Decl. ¶ 7;
    Docket Nos. 109, 110.

**III.   CONCLUSION**

For the reasons stated above, the Court **GRANTS** Plaintiff's motion for default judgment. An injunction is entered against Defendant Lee, requiring that Defendant Lee not infringe on any marks and copyrights owned by Plaintiff, as well as any marks that Plaintiff might acquire in the future.  Plaintiff is also awarded $40,000 in statutory damages, as well as any post-judgment interest as necessary.

This order disposes of Docket No. 103.


IT IS SO ORDERED.


Dated:  April 19, 2012

_____
EDWARD M. CHEN
United States District Judge